**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cassandra L. JACKSON and Willie
Mason, Defendants–Appellants.**

Nos. 92–2848 & 92–4031.

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1994.

Decided Sept. 6, 1994.

Rehearing Denied Nov. 1, 1994.

Barry R. Elden, Madeline Murphy (argued), Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Joan Hill McClain (argued), Hill–McClain & Dockery, Oak Park, IL, for Cassandra L. Jackson.

R. Eugene Pincham, Sr. (argued), Chicago, IL, for Willie Mason.

Before ALARCON,* RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Cassandra Jackson and Willie Mason were convicted on two and three counts, respectively, of structuring currency transactions in violation of 31 U.S.C. §§ 5324(3) and 5322(a). The Supreme Court's decision in *Ratzlaf v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), handed down well after the defendants' trial, requires that we reverse those convictions. Each defendant was also convicted, however, on one count of conspiracy to defraud the United States by impeding the lawful functions of the Internal Revenue Service (IRS) in violation of 18 U.S.C. § 371. For the reasons that follow, we affirm the § 371 conspiracy convictions.

## I

## BACKGROUND

At trial, the government attempted to demonstrate that the defendants illegally structured their financial transactions (i.e., broke up a transaction above the $10,000 reporting threshold into multiple transactions, *see* 31 U.S.C. § 5313(a); 31 C.F.R. § 103.22), and that they conspired to defraud the United States by impeding the lawful functions of the IRS. A great deal of the

* The Honorable Arthur L. Alarcon, of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

evidence, however, tended to demonstrate both allegations. Thus, although we reverse the antistructuring convictions under 31 U.S.C. §§ 5324(3) and 5322(a), we set forth in detail the structuring activity of the defendants—as well as other evidence—that demonstrates a conspiracy to defraud the United States under § 371.

The evidence the government presented consists of several groups of currency transactions executed by or at the behest of the defendants. The first group of transactions took place on April 22, 1986, the sale date of a house the defendants arranged to purchase in the name of Willie Mason's mother, Mary Sawyer. On that day, Ms. Jackson purchased seven cashier's checks at two different banks totalling $18,000, not one of which exceeded $5,000. These checks, along with $4,274.31 in cash, were tendered to pay the house's purchase price of $22,274.31. The second group of transactions concerned five separate deposits Mr. Mason had his aunt, Marie Bradley, make for him at three different banks in Alabama in the summer of 1986. These deposits, which according to testimony consisted in part of money Mr. Mason inherited from his father, totalled $22,000. No individual deposit exceeded $7,000, and three were made on the same day, June 3, 1986. All but one of the deposits were made into a separate account bearing Marie Bradley's name. Mr. Mason also gave Bradley $10,000 cash before he left Alabama. On July 6, 1987, Mr. Mason had his aunt withdraw for him most of the money from the accounts.

Another group of transactions stemmed from Mr. Mason's automobile purchases. In 1986, Mr. Mason purchased a 1986 Mercedes 560 SEL sedan. He made the initial payment on the car with four cashier's checks, each of which was for $9,000. Mr. Mason tendered the remainder of the slightly less than $60,000 purchase price with money orders and cash within a few days of the purchase. Shortly thereafter, in June 1986, Mr. Mason purchased a 1986 Chevrolet Corvette. Again he paid for the car in cash and money orders. He placed the title for the car in the name of Lula Triplett, Ms. Jackson's aunt, and did so without ever notifying Triplett. In October 1986, Mr. Mason purchased a

1987 Cadillac Fleetwood, and this time placed the title in Ms. Jackson's name. Once again, the car was paid for in checks and cash below $10,000. In the summer of 1987, Mr. Mason purchased another new Mercedes 560 SEL, which he placed in the name of one Sherman Sawyer; he later had the car made into a convertible. Finally, in 1988, Mr. Mason purchased two more expensive cars. Upon acquiring the first, a 1988 BMW convertible, Mr. Mason once again put the title in Lula Triplett's name. In the case of the second, a 1985 Jaguar XJS, he put the title in the name of Darryl Redmon. The Jaguar was purchased with three $9,000 cashier's checks; Mr. Mason was the remitter on two.

The next group of transactions concerns the defendants' purchase of another home in the fall of 1987. Ms. Jackson reviewed the real estate contract and signed the documents as the purchaser of record. On October 3, 1987, Ms. Jackson delivered the earnest money, $10,200; she brought it in the form of two checks, each of which was under $10,000, from two different banks. For the closing, which occurred on November 6, 1987, the defendants assembled over the course of several weeks sixteen cashier's checks totalling approximately $90,000, all of which were under $10,000. Many of these checks were purchased by persons other than the defendants, but, at the defendants' request, and always immediately after the defendants had visited their safety deposit box. For instance, on October 3, 1987, Michael Moretti, an acquaintance of Mr. Mason's, was approached by Mason outside of a bank. Mr. Mason asked Moretti to purchase a cashier's check for $5,200 and to list Ms. Jackson as the payee; Moretti did so. This was not the only time the defendants requested the help of Moretti, or of others, in obtaining cashier's checks. On October 29, Triplett, Ms. Jackson, and Moretti—using the name of Mike Martin—each purchased several checks totalling $30,000; not one check individually exceeded $9,000. Again, on November 2, Ms. Jackson and two acquaintances, Willie Sawyer and Laurie Hopewell, each purchased checks, the sum of which totalled $19,000 and the largest of which was $9,000. Two of these cashier's checks were, in fact, sequentially ordered, suggesting that they were purchased close in time from the same teller.

These checks, and others procured in similar fashion but not worth further detail here, were brought to the house closing. Ms. Jackson, as purchaser, signed all the relevant documents; but on those documents the purchaser was listed as American National Bank of Chicago, Trustee.

By the end of the spending spree, the defendants had spent over $300,000. At trial, the government offered evidence showing that, in the same time period, Social Security Administration records showed no wages for either defendant, as well as no reported income from self-employment. Moreover, the government presented evidence showing that neither defendant had filed a tax return with the IRS in any year between 1984 and 1990. The defendants offered no evidence in their behalf. Ms. Jackson and Mr. Mason were convicted on two and three counts, respectively, of structuring currency transactions in violation of 31 U.S.C. §§ 5324(3) and 5322(a). They were also convicted, under the first count of the indictment, of conspiring to defraud the United States in violation of 18 U.S.C. § 371. Specifically, they were convicted of conspiracy

> to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury, in particular, the Internal Revenue Service, in collecting information relating to the defendants' access to large amounts of cash, to defendants' cash transactions in excess of $10,000, and to defendants' expenditures of large amounts of cash on identifiable assets, all of which information is useful in criminal, tax and regulatory investigations.

R. 34 at 1 (superseding indictment). Ms. Jackson was sentenced to twenty-five months' incarceration on each of the three counts on which she was convicted, to run concurrently. Mr. Mason was sentenced to thirty-seven months' incarceration on each of the four counts on which he was convicted, also to run concurrently but consecutive to a state court sentence.

## II

## DISCUSSION

■ On appeal, the defendants contend— and the government concedes—that *Ratzlaf*

*v. United States*, —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), requires that we reverse the convictions for violations of the antistructuring statutes. We agree. In *Ratzlaf,* the Supreme Court held that the "willfully violating" language in 31 U.S.C. § 5322(a) means that "the government must prove that the defendant acted with knowledge that his conduct was unlawful." *Ratzlaf,* —— U.S. at ——, 114 S.Ct. at 657. In this case, the district court, in accordance with the law applicable in this circuit at the time, expressly instructed the jury that it was not required to find that they knew the currency structuring in which they engaged was unlawful. We must therefore reverse the convictions in counts two, three, and four of the indictment for violations of 31 U.S.C. §§ 5324(3) and 5322(a). *See United States v. Jones,* 21 F.3d 165, 172–73 (7th Cir.1994) (reversing and remanding structuring conviction in light of *Ratzlaf*). The defendants also submit, however, that we must reverse their convictions on count one of the indictment for conspiring to defraud the United States in violation of 18 U.S.C. § 371. We now take up each defendant's arguments in support of reversal on this latter count.

### A. *Willie Mason*

#### 1.

■ Mr. Mason submits that, because the defendants' § 371 conspiracy convictions were dependent on violations of the antistructuring laws, *Ratzlaf* requires that we reverse the conspiracy convictions. He also argues that, because the conspiracy convictions were based in part on structuring conduct that took place before Congress made structuring currency transactions illegal, the Ex Post Facto Clause of the Constitution of the United States requires that we reverse the defendants' conspiracy convictions. Mr. Mason's argument, therefore, would appear to be two-fold. It is, however, an argument actually based on a single premise—that the defendants' convictions for conspiring to defraud the United States were necessarily predicated on violations of the antistructuring laws. Mr. Mason thus asserts that the

conspiracy convictions should rise or fall with the structuring convictions.

In response, the government argues that a § 371 conspiracy to defraud the United States is an independent violation that need not be based on the violation of another substantive statute. The government points out that count one of the indictment in this case, which sets forth the § 371 charge, never mentions a structuring violation or the relevant antistructuring statutes. Count one charges a conspiracy "to defraud the United States"; it does not allege a conspiracy "to commit any offense against the United States." 18 U.S.C. § 371. The government argues that § 371 proscribes both sorts of conspiracies, but does so in the disjunctive, thereby obviating the need to demonstrate the violation of a separate substantive offense in a § 371 conviction for conspiracy to defraud the United States. A violation of a separate substantive statute, the government contends, *may* provide the overt act evidencing the conspiracy to defraud, but the presence of such a violation is not the *sine qua non* of a § 371 conspiracy.

The government submits that the foregoing principles reveal the lack of merit in both of Mr. Mason's claims. First, the government argues that *Ratzlaf* does not require reversal of the § 371 conspiracy. *Ratzlaf,* it maintains, concerned the interpretation of the term "willfully" in § 5322(a), a statute not implicated in the defendants' § 371 conspiracy conviction—either in the indictment setting forth the § 371 charge or in the jury instructions on the elements of a § 371 offense. The government therefore contends that it was not required to demonstrate knowledge of illegality, as *Ratzlaf* requires in convictions under the antistructuring laws. Rather, the government states that it needed to prove only the elements of a § 371 offense. Second, the government submits that, in regard to Mr. Mason's ex post facto argument, the date of enactment of the antistructuring laws has nothing to do with a § 371 conspiracy. The defendants, the government reiterates, were convicted in count one of the indictment of conspiracy to defraud the United States, not of conspiracy to violate the antistructuring laws. The government thus contends that the only relevant date of enactment for ex post facto purposes is that of § 371, which was enacted long before the events at issue in this case transpired.

■ We believe that the government's position is the correct one. In relevant part, 18 U.S.C. § 371 reads:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

As the language of the statute indicates, there are two different conspiracies with which a defendant can be charged under § 371—a conspiracy "to commit any offense against the United States," *or* a conspiracy "to defraud the United States." *See United States v. Bucey,* 876 F.2d 1297, 1311 (7th Cir.) (setting forth the "two prongs" of § 371), *cert. denied,* 493 U.S. 1004, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989). A conviction under § 371, therefore, does not *require* that the government prove a violation of a separate substantive statute. *Id.* at 1312; *accord United States v. Caldwell,* 989 F.2d 1056, 1059 (9th Cir.1993) (stating that under § 371 "[n]either the conspiracy's goal nor the means used to achieve it need to be independently illegal"); *United States v. Rosengarten,* 857 F.2d 76, 78 (2d Cir.1988) (stating that "section 371's ban on conspiracies to defraud need not involve the violation of a separate statute"), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). As the Supreme Court stated in discussing the predecessor to § 371, the government *may* allege the violation of specific statute to demonstrate a conspiracy to defraud the United States; but such an allegation is only "a way of consummating the conspiracy ... which, like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense." *Glasser v. United*

*States,* 315 U.S. 60, 67, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942).[1]

We thus cannot accept either of Mr. Mason's contentions. His first contention—that *Ratzlaf* requires reversal of the § 371 convictions—is misplaced because the government did not have to demonstrate that the defendants violated the antistructuring laws. *Ratzlaf*'s holding concerning the meaning of "willfully violating" in the antistructuring laws, therefore, has no bearing on the defendants' § 371 convictions; § 371 contains no such language. We recently rejected a similar argument in *United States v. Cyprian,* 23 F.3d 1189, 1201 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 211, —— L.Ed.2d —— (1994). The defendant in *Cyprian* also had been convicted of conspiring to defraud the United States by impeding the lawful functions of the IRS in violation of § 371. He contended that his conviction could not stand because the evidence failed to show that he "willfully" violated any federal tax laws the way that term had been interpreted by the Supreme Court.[2] In rejecting his argument, we noted that it was the tax statutes that contained the term "willfully," not § 371. We made clear that "this circuit's interpretation of § 371 liability has never indicated that subjective intent to commit a [separate] crime is a required element under this provision." *Cyprian,* 23 F.3d at 1201. We stated that

> to convict [a defendant] under the conspiracy to defraud clause of § 371, the government d[oes] not need to charge or prove that [the defendant] agreed (or had the intent) to commit a substantive ... offense. Rather, the government [i]s required to prove only that [the defendant] agreed to interfere with or obstruct the United States' ability to collect taxes by defrauding the IRS.

*Id.; see also United States v. Brown,* 31 F.3d 484, 489 n. 5 (7th Cir.1994) (distinguishing *Ratzlaf* because § 371 does not require willfulness); *United States v. Goulding,* 26 F.3d 656, 663 (7th Cir.1994) (rejecting defendants' argument "that they could be convicted under 18 U.S.C. § 371 only if they violated a specific tax provision").

Our decision in *Bucey* is also instructive. In that case, the defendant argued that his § 371 conviction for conspiring to defraud the United States had to be reversed because "the only conspiracy proven was a conspiracy to conceal the source of currency, which, he submits, is not criminal." *Bucey,* 876 F.2d at 1312. At the time of the defendant's activities in *Bucey,* Congress had not yet even made it illegal for an individual to structure currency transactions. *Id.* at 1313 n. 30. We nonetheless affirmed the § 371 conviction. In doing so, we emphasized that under § 371 "the government need not charge or prove that [the defendant] agreed to commit, or actually did commit a substantive offense": " '[A]cts which are in themselves legal lose their legal character when they become constituent elements of an unlawful scheme.' " *Id.* at 1312 (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 707, 82 S.Ct. 1404, 1414–15, 8 L.Ed.2d 777 (1962)). We therefore concluded that the "overall scheme to circumvent the currency reporting laws and to prevent the IRS from collecting accurate data, reports and income taxes supports a conspiracy conviction regardless of the absence of substantive currency law violations." *Id.* at 1313; *see also United States v. Jones,* 938 F.2d 737, 742 (7th Cir.1991) (relying on *Bucey* in affirming § 371 conviction under the defraud clause).

---

1. *See also Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924) ("To conspire to defraud the United States means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful government functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the governmental intention."); *Haas v. Henkel,*

216 U.S. 462, 479, 30 S.Ct. 249, 253–54, 54 L.Ed. 569 (1910) ("The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.").

2. *See United States v. Bishop,* 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973) (stating that "the word 'willfully' in [tax] statutes generally connotes a voluntary, intentional violation of a known legal duty").

■ Mr. Mason's second contention—that his § 371 conviction violates the ex post facto clause—fails for the same reason as the first contention: His § 371 conviction was not based on the antistructuring laws. Thus, whether there was structuring activity alleged in the indictment and proved at trial that took place before the enactment of the antistructuring laws is irrelevant for ex post facto purposes. The conviction was not based on the antistructuring laws, but rather on § 371 itself, and the structuring activity presented at trial served to demonstrate the existence of a § 371 conspiracy as much as it did any violation of the antistructuring laws.

In *United States v. Rosengarten,* 857 F.2d 76 (2d Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989), the Second Circuit rejected a similar ex post facto argument. The defendant in that case was also indicted for conspiring to defraud the United States by impeding the lawful function of the IRS. The acts underlying the indictment, however, concerned the backdating of real estate documents to take advantage of certain provisions in the Tax Reform Act of 1986. Because the defendant's backdating took place between the Act's October 22, 1986 enactment date and the Act's January 1, 1987 effective date, the district court dismissed the § 371 charge as violative of the ex post facto clause. The Second Circuit reversed. After noting the general proposition that "section 371's ban on conspiracies to defraud need not involve the violation of a separate statute," *id.* at 78, the court rejected the defendant's ex post facto argument:

> Application of the foregoing well-accepted principles makes it clear that the effective date of ... the Tax Reform Act was not determinative of whether appellees com-

mitted the crime of conspiring to defraud the United States. Appellees were not charged with violating [that Act]. They were charged with a section 371 conspiracy to defraud the Government by impeding and obstructing the functions of the IRS in the ascertainment and collection of income taxes.

*Id.* at 79. The same reasoning demonstrates that the enactment date of the antistructuring laws is not relevant for purposes of ex post facto analysis in the defendants' case. Rather, the only relevant date of enactment is that of § 371, and the overt acts the government proved at trial evidencing the conspiracy occurred long after that date.

■ To the extent that Mr. Mason's arguments can be construed as challenging the sufficiency of the evidence, we conclude that the government has proved the elements of a conspiracy to defraud the United States under § 371. Those elements are:

> (1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense, i.e., to defraud the United States.

*Cyprian,* 23 F.3d at 1201; *see also United States v. Marren,* 890 F.2d 924, 933 (7th Cir.1989); *United States v. Gaddis,* 877 F.2d 605, 608 (7th Cir.1989); *United States v. Hooks,* 848 F.2d 785, 792 (7th Cir.1988). The government must show that the defendant " 'agreed to interfere with or obstruct one of [the government's] lawful functions by deceit, craft or trickery, or at least by means that are dishonest.' " *Bucey,* 876 F.2d at 1312 (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)).[3] "[I]f [Mr. Mason's] actions con-

---

**3.** We recently held that a court's failure to define "defraud" under § 371 in accordance with the "deceit" language employed in *Hammerschmidt* did not constitute plain error. *See United States v. Knapp,* 25 F.3d 451, 455 (7th Cir.1994) ("Absent any indication in the record that the jury was led to believe that 'defraud' meant anything other than its commonly understood definition, [the defendant] was not denied a substantial right by the district judge's failure to further define the term 'defraud' in this context."). We need not decide whether a district court must provide a jury with such a definition because the district court in this case did so. *See* tr. 626–27

("Used in these instructions, 'to defraud the United States or any agency thereof' is not limited to cheating the government of property or money, but also means to impede or obstruct one of its lawful governmental functions by deceit or dishonest means."); *cf. United States v. Caldwell,* 989 F.2d 1056, 1060–61 (9th Cir.1993) (holding that failure to instruct the jury that the obstruction of a lawful government function had to be "by deceitful or dishonest means" required reversal because it constituted failure to instruct on "an essential element of a crime," which cannot be considered harmless).

stituted a conspiracy to impair the functioning of [the IRS], no other form of injury to the Federal Government need be established for the conspiracy to fall under § 371." *Tanner v. United States*, 483 U.S. 107, 128, 107 S.Ct. 2739, 2752, 97 L.Ed.2d 90 (1987).

Examining the evidence in the light most favorable to the government, we conclude that a rational jury could have found that the government proved the elements of the § 371 offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence at trial showed that Mr. Mason failed to file an income tax return and reported no legal income between 1984 and 1990. Yet in the same time period, Mr. Mason spent more than $300,000. More important, however, he went about making those purchases in a way that a reasonable jury could have found was designed to defraud the government. As the facts detailed in part I, *supra*, demonstrate, Mr. Mason and Ms. Jackson made concerted efforts to conceal their expenditures. For instance, they made many of their purchases in other persons' names. Furthermore, they not only structured currency transactions to avoid the filing of any currency transaction reports, but also had many individuals purchase for them those cashier's checks. The evidence thus showed that Mr. Mason conspired with Ms. Jackson to impede the IRS's attempt to "collect information relating to the defendants' access to large amounts of cash, to defendants' cash transactions in excess of $10,000, and to defendants' expenditures of large amounts of cash on identifiable assets." R.34 at 1 (superseding indictment). *Cf. Bucey*, 876 F.2d at 1313 (stating that the government sufficiently demonstrated that the defendant conspired "to obstruct by deceit, craft or trickery the lawful function of the Treasury in collecting accurate [currency transaction reports]," in "obtaining information concerning the sources and amounts of income," and in "assessing and collecting income taxes").

### 2.

■ Mr. Mason's next argument concerns the admissibility of his failure to file an income tax return between 1984 and 1990. He submits that the district court erred in admitting that evidence because it was highly prejudicial and thus deprived him of a fair trial. Moreover, he contends that the government failed to demonstrate that he owed any taxes in the years he did not file a return. In response, the government argues that the district court's evidentiary ruling on Mr. Mason's failure to file income tax returns was not erroneous, much less an abuse of discretion. The evidence, the government maintains, was admissible for two independent reasons: (1) to complete the story of the crime on trial; and (2) to show motive under Federal Rule of Evidence 404(b).

The district court did not abuse its discretion in admitting evidence concerning Mr. Mason's failure to file income tax returns. Moreover, we need not look to Rule 404(b) to determine the evidence's admissibility because we think the evidence was " 'necessary to complete the story of the crime [on] trial.' " *United States v. Roberts*, 933 F.2d 517, 520 (7th Cir.1991) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989)). Such evidence "is not precluded under Rule 404(b) because [it] does not relate to extraneous 'other acts.' " *Id.* Rather, it is evidence that is " 'intricately connected' with the very crime[ ] for which [the defendant] was being tried." *Id.* In this case, testimony concerning Mr. Mason's failure to file income tax returns was necessary to understand and make sense of the activity underlying the conspiracy; the failure to file returns was, in other words, "intricately connected" with a conspiracy to impede and obstruct the IRS. It was not necessary, therefore, to subject its admission to a Rule 404(b) analysis. *See United States v. Muhammad*, 928 F.2d 1461, 1468 (7th Cir. 1991) (holding that admission of evidence showing defendant's participation in shooting incident was not subject to Rule 404(b) analysis because it provided "context" and was "directly relevant" and "intricately related" to the crime charged, possession of a firearm). Moreover, we believe that the district court was within its discretion in determining that the probative value of the evidence outweighed any possible prejudice under Rule

403. *See United States v. Prevatte*, 16 F.3d 767, 778 (7th Cir.1994) (stating that "a reviewing court should 'accord a trial judge's assessment of the relative probative value and unfair prejudice great deference'") (quoting *United States v. Koen*, 982 F.2d 1101, 1116 (7th Cir.1992)).[4]

### 3.

Mr. Mason's remaining arguments concern his sentence. In this case, however, we reverse three of the four counts on which Mr. Mason was convicted, vacate his sentence, and remand to the district court for resentencing. Because "the effect of a vacation is to nullify the previously imposed sentence," the district court on remand will be writing "on a clean slate." *United States v. Atkinson*, 979 F.2d 1219, 1223 (7th Cir.1992). As a result, we generally do not address a defendant's additional arguments concerning errors in the sentencing process, *see id.*, and do not think it an efficient use of judicial resources to do so here. Nonetheless, we shall expeditiously dispose of one of Mr. Mason's sentencing arguments—that the district court's application of the Sentencing Guidelines to his case violated the Ex Post Facto Clause. Mr. Mason's basis for this argument is the fact that some of the overt acts alleged in the indictment and proved at trial occurred before the date the Guidelines became effective. Mr. Mason offers no authority for his contention, and for good reason: We rejected the argument long ago. *See United States v. Fazio*, 914 F.2d 950, 959 (7th Cir. 1990) (holding that "the guidelines apply to a defendant whose offense begins before the effective date of the guidelines but continues beyond the effective date of the guidelines"); *see also United States v. Roberts*, 22 F.3d 744, 750 (7th Cir.1994) ("The Guidelines apply to straddle crimes."). The district court did not err by sentencing Mr. Mason under the Guidelines.

### B.  *Cassandra Jackson*

#### 1.

In the course of arguing that the evidence against her was insufficient to sus-tain the conviction, Ms. Jackson also submits that the district court erred in giving an "ostrich instruction" to the jury at the close of the evidence.

On the matter of sufficiency, she asserts that the evidence presented against her showed only that she purchased some cashier's checks, signed some real estate documents, and allowed title to be put in her name on some property—all for Mr. Mason. She thus contends that no reasonable jury could have concluded that she "knowingly" conspired to defraud the United States in violation of § 371. Although this evidence was circumstantial in nature, we believe that it is sufficient to sustain the jury's decision. Moreover, we cannot say that the district court erred in giving an "ostrich instruction." That instruction read:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what he or she was doing and was aware of the nature of his or her conduct, and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case. You may infer knowledge from a combination of suspicion and indifference to the truth. If you find that a person had a strong suspicion that things were not what they seemed or that someone had withheld some important facts, yet shut his eyes for fear of what he would learn, you may conclude that he acted knowingly, as I have used that word.

Tr. 626.

We have stated that "an ostrich instruction is appropriate when 'the defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance.'" *United States v. Bigelow*, 914 F.2d 966, 970 (7th Cir.1990) (quoting *United States v. Talkington*, 875 F.2d 591, 596 (7th Cir.1989)), *cert. denied*, 498 U.S. 1121, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991); *see also United States v. Walker*, 25 F.3d 540, 546 (7th Cir.1994) (same). We

---

4. In the alternative, we note in passing that, if this evidence were required to pass muster under the standards that govern Rule 404(b), this sub-mission would clearly meet the test set forth in *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984).

have also specifically sustained the use of the instruction in a conspiracy case. *See United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). Examining the evidence in the light most favorable to the government, *see Bigelow*, 914 F.2d at 970, we believe that the "ostrich instruction" was justified. Ms. Jackson claimed at trial (and, indeed, still claims on appeal) that she lacked guilty knowledge when she participated in the conspiratorial activities. Furthermore, a reasonable person involved in the kinds of activities in which Ms. Jackson was involved—purchasing multiple cashier's checks for expensive purchases made in other persons' names, signing closing documents for houses purchased in other persons' names with multiple cashier's checks obtained by other persons, etc., *see infra* part I—would have "strongly suspect[ed] that [she] was involved in shady dealings." *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir.1990). We therefore do not believe the district court erred in instructing the jury that it could infer knowledge—via suspicion and indifference to the truth—from Ms. Jackson's participation in such activity.[5]

### 2.

■ Ms. Jackson also argues that her trial counsel's performance deprived her of her Sixth Amendment right to effective assistance of counsel. She contends that her trial counsel fell "well below" the objective standard of reasonableness for two reasons. First, she claims that her trial counsel failed to call several witnesses who were willing to testify to her drug addiction. She states that, if her counsel had done so, the jury could have inferred from their testimony that she was incapable of forming the requisite intent to commit the conspiracy. Second, she contends that her trial counsel's failure

to move for severance under Federal Rule of Criminal Procedure 14 also deprived her of effective assistance of counsel. If her counsel had done so, she contends that the district court would likely have granted the motion due to the "gross disparity" of evidence that existed against herself and Mr. Mason.

With respect to the failure to call certain witnesses, we do not know the substance of the testimony those alleged witnesses would have given if Ms. Jackson's trial counsel had called them. The record on this issue, therefore, is not sufficiently developed to consider adequately her ineffective assistance claim on this ground. Because "an examination of the record does not provide clear evidence of the ineffective assistance of counsel," we do not believe that the "problem is ripe for adjudication on the appellate level." *United States v. Lang*, 644 F.2d 1232, 1240 (7th Cir.), *cert. denied*, 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). "That is precisely why, as a general rule, we 'prefer[ ] not to consider ineffective assistance of trial counsel claims raised for the first time on appeal.' " *United States v. Ellis*, 23 F.3d 1268, 1274 (7th Cir.1994) (quoting *United States v. Badger*, 983 F.2d 1443, 1458 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993)). We therefore decline to entertain Ms. Jackson's ineffective assistance argument in this direct appeal. She may raise the matter in a petition for collateral relief under 28 U.S.C. § 2255 if she so desires.

■ The claim that her counsel's failure to make a severance motion under Rule 14 constituted ineffective assistance does not present the same barriers to adjudication at this juncture. We do not believe, however, that Ms. Jackson can meet either prong of the test set forth by the Supreme Court of

---

5. We need not address at length the other error Ms. Jackson asserts concerning the instructions. She argues, without authority, that the district court erred in giving a "mere presence" instruction that failed to include the "beyond a reasonable doubt" standard. We do not agree. First, the instruction the district court gave was identical to the one we approved in *United States v. Simone*, 931 F.2d 1186, 1192 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 584, 116 L.Ed.2d

609 (1991). Second, we review instructions not "in lonely isolation, but rather in the context of the trial as an integrated whole." *Bigelow*, 914 F.2d at 970. In light of that principle, we note that the district court recited the "beyond a reasonable doubt" standard six times in the three pages of instructions that precede the "mere presence" instruction, and those instructions also dealt with proof of the conspiracy. *See* tr. 623–26.

**876**

the United States in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Given the presumption that counsel was competent, we cannot say that the failure to seek severance was not a tactical decision on the part of counsel. Indeed, an examination of defense counsel's closing argument makes clear that he argued that his client was the innocent dupe of Mr. Mason. *See* tr. 591–607. In any event, we think that it is highly unlikely that a motion for severance would have been granted. The district court would have been required to balance the risk of guilt by association that Ms. Jackson might incur against the benefit to the judicial system from a joint trial. *See United States v. Bond,* 847 F.2d 1233, 1240 (7th Cir.1988). As we pointed out in *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987), the benefits to the judicial system from a joint trial are substantial. *See also Zafiro v. United States,* —— U.S. ——, ——, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). Ms. Jackson gives us no reason to conclude that those factors would not have predominated over the possibility of prejudice to her, a possibility present in any joint trial. Finally, we note that the district court admonished the jury that it had the obligation to give separate consideration to each defendant.

## Conclusion

For the foregoing reasons, we affirm the defendants' convictions on count one of the indictment, conspiracy to defraud the United States under 18 U.S.C. § 371. We reverse Mr. Mason's convictions on counts two, three, and four of the indictment, and reverse Ms. Jackson's convictions on counts two and three of the indictment. We therefore vacate the defendants' sentences and remand for proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.