UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles W. LAHEY and John P. Currens,
Defendants–Appellants.

Nos. 94–2203, 94–2204.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 13, 1995.

Decided May 22, 1995.

Rehearing Denied June 23, 1995.

Janet K. Jones, Robert E. Lindsay, Dept. of Justice, Tax Div., Appellate Section, Alan Hechtkopf, Yoel Tobin (argued), U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S. in No. 94–2203.

Anthony V. Luber, South Bend, IN (argued), for Charles W. Lahey.

Janet K. Jones, Robert E. Lindsay, Dept. of Justice, Tax Div., Appellate Section, Alan Hechtkopf, Yoel Tobin (argued), U.S. Dept. of Justice, Tax Div., Edward F. Cronin, Dept. of Justice, Tax Div., Washington, DC, for U.S. in No. 94–2204.

Philip Skodinski, South Bend, IN (argued), for John P. Currens.

Before POSNER, Chief Judge, and BAUER and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

Charles W. Lahey and John P. Currens were convicted by a jury of conspiring to obstruct justice by agreeing that Currens would provide false testimony to a grand jury investigating Lahey. The defendants challenge their convictions on several grounds. We affirm.

I.

Lahey is an attorney who was licensed to practice law in the State of Indiana and whose practice was based in South Bend, Indiana. In June 1989, the Internal Revenue Service ("IRS") notified Lahey and his wife, Jennifer, that their tax returns for the years 1986 and 1987 had been selected for an audit. The IRS requested that the Laheys produce several records concerning Lahey's practice during those years. In their first meeting with IRS auditor Ruth Hoyt, accountants hired by Lahey informed Hoyt that Lahey had no records of the gross receipts from his practice in 1986 and in 1987.

Lahey applied for a position as an Assistant United States Attorney for the Northern District of Indiana in November 1989. Lahey was offered the position, but the offer was contingent upon Lahey successfully resolving his tax audit.

Hoyt indirectly reconstructed the Laheys' finances by comparing their actual expenditures with reported income. Her analysis revealed discrepancies between their expenditures and reported income in 1986 and in 1987. In a letter dated January 8, 1990, Hoyt informed the Laheys that the audit had been expanded to include 1988. Hoyt met with Lahey several times in January 1990. Lahey informed Hoyt that he needed to resolve the audit quickly and without penalties so that he could accept a position with the United States Attorney's office, and offered to pay $21,000 to resolve the audit. Hoyt, however, said that the audit could not be resolved quickly because she had no records of Lahey's gross receipts. Lahey told Hoyt that in 1986 and in 1987 he and his wife would have had approximately $150 in cash on hand from all sources at any one time. Lahey also told Hoyt that he received cash from clients eight to twelve times a year without recording the income. In a later meeting, Lahey claimed to have received various amounts of cash as gifts and loan repayments in 1986 and in 1987 from several family members. Hoyt then referred the matter to the Department of Justice as a criminal investigation.

In April 1992, Lahey destroyed several client files which contained records of fee payments. The IRS served Lahey with a grand jury subpoena on May 26, 1992. The subpoena requested all records concerning the receipt of payments from clients from 1986 through 1988. Although Lahey turned over several documents, he did not produce any receipt books, client ledgers, billing statements, files, or payment cards, which were specifically requested by the subpoena. Lahey destroyed additional client files in June 1992. The IRS executed a search war-

rant in Lahey's office on July 10, 1992, and found some records of fee payments. Lahey's receipt books from 1986 through 1988, and hundreds of client files and payment cards, were missing.

Currens, Lahey's brother-in-law, was interviewed by two IRS agents at Currens' place of employment in San Francisco, California, on February 19, 1993, in connection with the investigation of Lahey. Currens told the agents that the Laheys had loaned him $15,000 in 1992 in the form of a check. Currens was being charged interest on the loan at the rate the Laheys had been charged to obtain the funds, and he had not yet made any repayments. Currens also told the agents that he had made several cash loans to the Laheys after 1984, but the only specific loan Currens could recall was between $3,000 and $4,000. Currens said that this was his largest loan and it was made at least two years prior to the date of the interview.

Currens testified before a grand jury investigating Lahey on March 3, 1993. Currens testified that Lahey had loaned him $10,000 in 1976 by check. Currens did not repay any portion of this interest-free loan until 1986. Currens made several cash payments to the Laheys from 1986 to 1988 totalling $25,000, including a $10,000 payment to Jennifer Lahey, Currens' sister, in 1988. As a result of these payments, the Laheys owed Currens $15,000. Lahey repaid this loan by check in the fall of 1991 or in the spring of 1992. Currens testified that there were no documents reflecting the $10,000 loan to Currens in 1976, a claimed $5,000 cash repayment by Currens to the Laheys in 1986, or Currens' subsequent $15,000 loan to the Laheys. Currens denied telling the IRS agents that the $15,000 check from Lahey was a loan to Currens on which Currens would be paying interest. Currens also testified that he did not tell the IRS agents about these transactions because they had not asked him about anything from 1986 to 1988. Currens testified that he had spoken with Lahey the night before his appearance before the grand jury but did not discuss his testimony.

The grand jury returned an indictment against Lahey and Currens on April 8, 1993. Counts One through Three of the six-count indictment charged Lahey with filing false income tax returns for the years 1986, 1987, and 1988, respectively. 26 U.S.C. § 7206(1). Count Four charged Lahey with corruptly obstructing the due administration of the internal revenue laws. 26 U.S.C. § 7212(a). Count Five charged Lahey with obstructing the due administration of justice by failing to comply with the grand jury subpoena and by destroying subpoenaed records. 18 U.S.C. § 1503 (1988). Count Six charged Lahey and Currens with conspiring to obstruct the due administration of justice by agreeing that Currens would provide false testimony to the grand jury. 18 U.S.C. §§ 371, 1503 (1988).

At the close of the government's evidence, the district court granted Lahey's motion for judgment of acquittal on Counts One through Five of the indictment. Fed.R.Crim.P. 29(a). The district court denied the defendants' motion for judgment of acquittal on Count Six. The jury convicted Lahey and Currens on this count. The defendants filed post-trial motions for judgments of acquittal and a new trial, which the district court denied.

## II.

The defendants first challenge the sufficiency of the evidence to support their conspiracy convictions. In reviewing their challenge, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Johnson*, 26 F.3d 669, 684 (7th Cir.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* —— U.S. ——, 115 S.Ct. 344, 130 L.Ed.2d 300 (1994). We will not reweigh the evidence or judge the credibility of witnesses in making this determination. *United States v. Maholias,* 985 F.2d 869, 874 (7th Cir.1993). We may reverse a conviction " 'only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt.' " *Johnson,* 26 F.3d at 684 (citation omitted).

A conspiracy is "an agreement to commit a crime." *United States v. Lechuga*, 994 F.2d 346, 348 (7th Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). To prove a conspiracy, the government must establish that (1) there was an agreement between two or more persons to commit an unlawful act; (2) the defendant was a party to the agreement; and (3) an overt act was committed in furtherance of the agreement by one of the coconspirators. *United States v. Olson*, 978 F.2d 1472, 1478 (7th Cir.1992) (citation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993). The proper standard of appellate review for an individual defendant's participation in a conspiracy is substantial evidence. *United States v. Durrive*, 902 F.2d 1221, 1229 (7th Cir.1990). In meeting its burden of proof, the government may present circumstantial evidence, which may be the sole support for a conspiracy conviction. *Id.* at 1225. The government, however, must prove a defendant's membership in the conspiracy by the defendant's own words and acts. *United States v. Martinez de Ortiz*, 907 F.2d 629, 635 (7th Cir.1990) (*en banc*), *cert. denied*, 498 U.S. 1029, 111 S.Ct. 684, 112 L.Ed.2d 676 (1991).

The defendants contend that the government presented insufficient evidence to prove that Currens perjured himself before the grand jury in violation of 18 U.S.C. §§ 1621 [1] or 1623.[2] This argument misapprehends the government's burden of proof. The defendants were not charged with perjury or subornation of perjury under 18 U.S.C. §§ 1621, 1622,[3] or 1623; they were charged with conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371 [4] and 1503.[5] *See United States v. Langella*, 776 F.2d 1078, 1082 (2d Cir.1985) (perjury and obstruction of justice are distinct offenses and each requires proof of elements that the other does not), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). Although the government was required to prove that an overt act was committed in furtherance of the conspiracy by one of the coconspirators, "overt acts do not have to be substantive crimes themselves." *United States v. Crabtree*, 979 F.2d 1261, 1267 (7th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 216, 126 L.Ed.2d 173 (1993); *accord United States v. Jackson*, 33 F.3d 866, 870 (7th Cir.1994) ("A conviction under § 371 ... does not *require* that the government prove a violation of a separate substantive statute."), *cert. denied*, —— U.S. ——, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995). The overt acts alleged in Count Six consisted of ten instances of false testimony by Currens before the grand jury. These allegations did not transform Count Six into a substantive perjury charge.

1. Section 1621 provides in relevant part:

   Whoever—
   (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true;

   \*      \*      \*      \*      \*      \*

   is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

2. Section 1623(a) provides in relevant part:

   Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined under this title or imprisoned not more than five years, or both.

3. Section 1622 provides:

   Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both.

4. Section 371 provides in relevant part:

   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

5. Prior to its amendments in 1994, section 1503 provided in relevant part:

   Whoever ... corruptly ... influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

■ The government presented overwhelming evidence that Currens lied to the grand jury. Currens' grand jury testimony provided the Laheys with a nontaxable source of cash during the years under investigation. According to this testimony, the Laheys loaned him $10,000 in 1976, Currens repaid $5,000 of this loan in cash in 1986, and Currens paid the Laheys $10,000 in cash in 1987 and in 1988. These payments resulted in a $15,000 loan to the Laheys which they repaid by check in the fall of 1991 or in the spring of 1992. Yet less than two weeks earlier, Currens told the IRS agents that the $15,000 check was a loan from the Laheys to him. When asked about any loans he had made to the Laheys after 1984, the largest, and only specific, loan Currens could recall was between $3,000 and $4,000. Currens did not mention any of his cash payments totalling $25,000 to the Laheys from 1986 through 1988. Currens' explanation to the grand jury for these discrepancies—that the IRS agents had not asked him about any transactions from 1986 to 1988—was contradicted by the trial testimony of the two agents.

Currens' grand jury testimony was also inconsistent with his other prior representations to the IRS. Currens filed financial statements with the IRS in July 1988 and in July 1989 (in connection with an unrelated tax liability of Currens') which did not include any debts owed to or from the Laheys. Currens filed another financial statement with the IRS in July 1990 which reported that Currens owed Lahey $20,000 and that Currens had repaid $7,500 of this debt in 1988 and $7,500 in 1989. Currens' grand jury testimony was further contradicted by the trial testimony of Jennifer Lahey that Currens paid her only $2,500 in cash in 1988, rather than the $10,000 in cash to which Currens testified. Jennifer Lahey also testified at trial that the $15,000 check to Currens from the Laheys in 1991 or 1992 was a gift,

not a loan repayment. Finally, Lahey told Hoyt during the IRS audit that he received a $7,500 loan repayment from Currens in 1988, not a $10,000 cash loan from Currens in 1988, and Lahey did not mention that Currens was a source of cash in 1986 and in 1987. This evidence, when viewed in the light most favorable to the government, was more than sufficient for the jury to conclude that Currens committed the overt acts charged in the indictment.[6]

The defendants contend that the government presented insufficient evidence that Lahey and Currens formed an agreement to commit a crime. Given the overwhelming evidence of the falsity of Currens' grand jury testimony, the defendants' position boils down to an assertion that the government failed to prove that Currens lied pursuant to an agreement with Lahey rather than on his own. The government's evidence supporting the existence of an agreement was, however, substantial. The government's theory of the case was that, when the grand jury began to unearth evidence that Lahey had underreported his income for the years 1986, 1987, and 1988, Currens stepped forward as the purported source of thousands of dollars in undocumented cash during those years. The jury could have readily concluded that the transactions to which Currens testified before the grand jury did not occur, and that these lies were coordinated by the defendants.

IRS revenue agent Harry Bigda testified at trial that Lahey understated the gross receipts from his law practice by at least $11,869.65 on his 1986 federal income tax return, $15,312.22 on his 1987 return, and $17,478.75 on his 1988 return. Bigda's testimony was based on an analysis of Lahey's bank deposits in his legal fees account and was consistent with Hoyt's conclusion during the audit that Lahey had underreported his income.[7]

---

6. We note that, contrary to the defendants' position, this evidence would also have been sufficient to support a perjury conviction if Currens had been charged with that offense. 18 U.S.C. §§ 1621, 1623; *United States v. Waldemer,* 50 F.3d 1379, 1380 (7th Cir.1995) ("In order to convict a grand jury witness of perjury under 18 U.S.C. § 1623, the government must not only

prove that the witness's testimony was false, it must also prove that the false testimony was material to a legitimate inquiry of the grand jury.").

7. The defendants' challenge to Bigda's method of analysis is without merit. *See United States v. Lacob,* 416 F.2d 756, 759–60 (7th Cir.1969)

Lahey was under pressure to resolve the audit quickly in order to accept a position as an Assistant United States Attorney. Hoyt, however, could not resolve the audit quickly because Lahey had refused to supply records of the gross receipts from his law practice. Rather than provide Hoyt with these records, Lahey invented undocumented and nontaxable sources of cash from family members during the years in question. For example, Lahey told Hoyt that his father, James Lahey, gave him $1,500 in cash in 1986 and $2,000 in cash in 1988. James Lahey, however, testified at trial that he did not give any cash gifts to the Laheys from 1986 through 1988, and he gave the Laheys only $300 by check each year during this time. Lahey also destroyed client files containing records of fee payments both shortly before and after being served with a grand jury subpoena in May 1992. Lahey did not produce any receipt books, client ledgers, billing statements, files, or payment cards in response to the subpoena. When the IRS searched Lahey's office in July 1992, his receipt books from 1986 through 1988, and hundreds of client files and payment cards, were missing. The jury could have easily concluded that Currens' false grand jury testimony was consistent with Lahey's efforts to conceal his taxable income from the IRS and thereby inferred the existence of an agreement between Lahey and Currens.

The defendants' history of using each other as sources of cash when convenient also supports an inference that Currens' lies to the grand jury were coordinated with Lahey. When Lahey needed to resolve the IRS audit quickly and without penalties, he told Hoyt that he received a $7,500 loan repayment from Currens in 1988 based on an undocumented debt from the 1970s. Similarly, Currens, while attempting to resolve his own tax liability with the IRS, filed a financial statement in July 1990 which reported that Currens owed Lahey $20,000 and that Currens

had repaid $7,500 of this debt in 1988 and $7,500 in 1989. This purported $20,000 debt was more than two-thirds of the total liability which Currens claimed on the IRS form. Yet in October 1991, when Currens was attempting to purchase a house, Currens submitted a mortgage application to a bank which stated that Jennifer Lahey owed him $15,000 and which did not include any purported debt owed by Currens to the Laheys.

The defendants assert that evidence that Lahey destroyed records of fee payments and invented sources of nontaxable income was inadmissible as to Count Six under Federal Rule of Evidence 404(b).[8] The defendants did not object to the admission of this evidence at trial, did not move to strike this evidence after the district court had granted Lahey's motion for judgment of acquittal on Counts One through Five, and did not request that the district court give a limiting instruction to the jury that this evidence should not be considered with respect to Count Six. *See* Fed.R.Evid. 105. We therefore review the defendants' claim for plain error only. *United States v. Olano,* ___ U.S. ___, ___ ___, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993).

■ No error was committed, plain or otherwise. "[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence" under Rule 404(b) if the evidence is "inextricably intertwined with the evidence regarding the charged offense," or is "necessary to complete the story of the crime [on] trial." *United States v. Roberts,* 933 F.2d 517, 520 (7th Cir.1991) (citation and internal quotation marks omitted). The conspiracy between Lahey and Currens to provide false testimony to the grand jury was the culmination of Lahey's continuous efforts to conceal the gross receipts from his law practice from 1986 through 1988 from the IRS and the grand jury. The evidence that Lahey de-

---

(holding that the government's use of the "bank deposit theory" of proof of unreported income did not violate any of the defendant's rights), *cert. denied,* 396 U.S. 1059, 90 S.Ct. 755, 24 L.Ed.2d 754 (1970).

**8.** Rule 404(b) provides in relevant part:

**(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

stroyed records of fee payments and created fictitious sources of nontaxable income was clearly "necessary to complete the story of the crime [on] trial" and "inextricably intertwined" with the conspiracy. *Id.* The admission of this evidence was therefore not subject to Rule 404(b) analysis. *Jackson,* 33 F.3d at 873. The district court also did not abuse its discretion in concluding that the probative value of this evidence outweighed any possible prejudice under Federal Rule of Evidence 403. *See id.* at 873–74.

### III.

The defendants raise several additional challenges to their convictions, none of which is persuasive.

■ The defendants contend that Lahey's acquittal on the first five counts of the indictment collaterally estopped the government from proving their guilt on Count Six with evidence which also proved Lahey's guilt on Counts Four and Five. Currens' argument is directly foreclosed by *Standefer v. United States,* 447 U.S. 10, 21–25, 100 S.Ct. 1999, 2006–08, 64 L.Ed.2d 689 (1980), which held that nonmutual offensive collateral estoppel cannot be applied against the government in criminal cases. The Supreme Court in *Standefer* affirmed the conviction of a defendant for aiding and abetting in the commission of a federal offense who was prosecuted after the alleged perpetrator of the offense had been acquitted. *Standefer,* 447 U.S. at 11–14, 100 S.Ct. at 2001–03. Lahey's argument is equally without merit. A criminal defendant convicted by a jury on one count cannot attack that conviction simply because it was inconsistent with the jury's verdict of acquittal on another count. *United States v. Powell,* 469 U.S. 57, 62–69, 105 S.Ct. 471, 475–79, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *cf. Dowling v. United States,* 493 U.S. 342, 347–52, 110 S.Ct. 668, 671–74, 107 L.Ed.2d 708 (1990). Although Lahey was acquitted by the district court through a motion for judgment of acquittal rather than by a jury, this distinction is irrelevant. *Harris v. Rivera,* 454 U.S. 339, 345–47, 102 S.Ct. 460, 464–65, 70 L.Ed.2d 530 (1981) *(per curiam ).*

■ Lahey asserts that the district court erred by failing to inform the jury that the district court had granted Lahey's motion for judgment of acquittal on Counts One through Five. The district court merely instructed the jury that "[t]he other counts of this indictment are no longer before you and you must consider only the remaining Count 6." Tr. at 829. Lahey did not object to this instruction or to the district court's admonition that the defendants were not to mention the acquittals during closing argument. Tr. at 718–19. We therefore review Lahey's claim for plain error only. *Olano,* —— U.S. at —— ——, 113 S.Ct. at 1776–79. No error was committed. A judgment of acquittal is only relevant to whether a prosecution is barred by double jeopardy or collateral estoppel. *United States v. Jones,* 808 F.2d 561, 566 (7th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987); *see also Prince v. Lockhart,* 971 F.2d 118, 122 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1394, 122 L.Ed.2d 768 (1993). A judgment of acquittal is not admissible to rebut inferences that may be drawn from the evidence "because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." *Jones,* 808 F.2d at 566 (citation and internal quotation marks omitted); *accord Prince,* 971 F.2d at 122.

■ The defendants assert that the district court's conspiracy instructions did not properly instruct the jury on the elements of the offense. The defendants did not object to these instructions below, so we again review their claim for plain error only. *Olano,* —— U.S. at —— – ——, 113 S.Ct. at 1776–79. And again, no error was committed, plain or otherwise. The defendants claim that Count Six of the indictment, which was read to the jury, did not specify whether they were charged with a conspiracy to defraud the United States or a conspiracy to commit an offense against the United States under 18 U.S.C. § 371. *See Jackson,* 33 F.3d at 870 (section 371 of title 18 proscribes both types of conspiracies in the disjunctive). This argument is without merit. Count Six charged

that the defendants "did unlawfully, willfully and knowingly, conspire, combine, confederate, and agree, together and with each other ... to obstruct the due administration of justice in the federal grand jury investigation of CHARLES W. LAHEY." Count Six thus clearly charged the defendants with conspiring to commit an offense against the United States. *See* 18 U.S.C. § 1503 (1988). The defendants also contend that the district court should have instructed the jury on the elements of perjury. Because, as we have already explained, the defendants were not charged with either perjury or subornation of perjury, they were not entitled to receive this instruction.

■ During oral argument, inquiry was made as to whether the district court had a broader view of what the government could prove to establish the defendants' guilt than what was alleged in Count Six. The district court's jury instructions do not reflect any such misunderstanding. The district court gave this circuit's pattern jury instruction defining conspiracy, *Federal Criminal Jury Instructions of the Seventh Circuit* § 5.11

(1980),[9] Tr. at 829–30, and read Count Six to the jury verbatim. Tr. at 824–29. The district court also read the relevant portions of the conspiracy statute, 18 U.S.C. § 371, and the obstruction of justice statute, 18 U.S.C. § 1503 (1988), to the jury.[10] Tr. at 829, 831. The district court's instructions accurately stated the law of conspiracy in this circuit and conveyed to the jury the elements the government was required to prove on Count Six. The instructions therefore do not impair the defendants' convictions.

■ The defendants contend that improper remarks during the prosecutor's closing argument constitute reversible error. The only remark to which either defendant objected at trial, however, was the prosecutor's statement that "I think the citizens—the grand jurors here in Indiana would have liked to have known that he [Currens] said something different before." Tr. at 746. In evaluating the defendants' claim, we must first examine the remark in isolation to determine if it was proper. *United States v. Badger*, 983 F.2d 1443, 1450 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). If the statement is

9. This instruction states:
    In order to establish the offense of conspiracy, the government must prove these elements beyond a reasonable doubt:
    1. that the alleged conspiracy existed, and
    2. that an overt act was committed in furtherance of the conspiracy, and
    3. that the defendant knowingly and intentionally became a member of the conspiracy.
    A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be established even if its purpose was not accomplished.
    In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.
    A conspiracy is not proved unless the evidence establishes that at least one overt act was committed by at least one conspirator to further the purpose of the conspiracy. It is not necessary that all the overt acts charged in the indictment be proved, and the overt act proved may itself be a lawful act.
    In determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant.
    To be a member of the conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The govern-

ment must prove beyond a reasonable doubt, from the defendant's own acts and statements, that he was aware of the common purpose and was a willing participant.
    The portion of this instruction which states, "[i]n determining whether the defendant became a member of the conspiracy you may consider only the acts and statements of that particular defendant," has been held to be inconsistent with Federal Rule of Evidence 104(a) and *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). *United States v. Martinez de Ortiz*, 907 F.2d 629, 633–35 (7th Cir.1990) (*en banc* ), *cert. denied*, 498 U.S. 1029, 111 S.Ct. 684, 112 L.Ed.2d 676 (1991). The defendants do not challenge the inclusion of this sentence in the district court's conspiracy instructions, which is not plain error because the sentence favors the accused. *Id.* at 635.

10. The district court further instructed the jury as follows:
    In order to prove the defendant guilty of the charges in Count 6 of the indictment, the government must prove beyond a reasonable doubt that each defendant knew of a pending grand jury proceeding and specifically intended to impede its administration, prior to the commission of an overt act of the conspiracy. Tr. at 832. This instruction accurately stated the knowledge and intent requirements of 18 U.S.C. § 1503. *E.g., United States v. Bucey*, 876 F.2d 1297, 1314 (7th Cir.), *cert. denied*, 493 U.S. 1004, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989).

proper, our analysis ends. *Id.* If the statement is improper, "our second step is to look at the remark[ ] in light of the entire record to determine if the defendants were deprived of a fair trial." *Id.* The defendants assert that the prosecutor's statement was improper because it suggested that the grand jury had already concluded that the defendants were guilty. In our view, however, the remark merely emphasized that Currens' grand jury testimony was material to the grand jury's investigation of Lahey and thus was proper.

Because the defendants did not object to any of the other challenged remarks at trial, we review their claims for plain error only. *Olano,* —— U.S. at —— – ——, 113 S.Ct. at 1776–79; *United States v. Rose,* 12 F.3d 1414, 1422 (7th Cir.1994). The defendants are unable to establish plain error under *Olano* because they have not shown that any of the prosecutor's remarks was improper or "seriously affect[ed] the fairness, integrity or public reputation" of the trial. *Olano,* —— U.S. at ——, 113 S.Ct. at 1779.

■ The defendants assert that the prosecutor misstated evidence during closing argument. The defendants claim that the prosecutor stated that Lahey did not inform Hoyt of the existence of sources of income from family members until January 16, 1990. The defendants have misread the trial transcript. What the prosecutor argued was that, consistent with the evidence, Lahey invented nontaxable sources of cash from family members in order to resolve the audit quickly and without penalties. The prosecutor did not argue that Lahey never claimed to have received cash from family members until the audit. *See* Tr. at 750–51 (prosecutor refers to an IRS form during closing argument in which Lahey claimed in September 1989 to have received "gifts from parents").

The defendants contend that the prosecutor argued that during the audit Lahey invented the $7,500 loan repayment in 1988 from Currens because he failed to mention the repayment to Hoyt on September 11, 1989, and January 10, 1990, when Lahey had not been informed that he was under audit for 1988 on those dates. What the prosecutor was arguing, however, was that Lahey's failure to mention Currens as a source of

cash until the later stages of the audit showed that Currens' grand jury testimony was false. Tr. at 750. This argument was a reasonable inference from the evidence. *See Rose,* 12 F.3d at 1424 (" 'counsel may make arguments reasonably inferred from the evidence presented' "). Even if the prosecutor's remarks were ambiguous, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974).

The defendants assert that the prosecutor misrepresented the trial testimony of Jennifer Lahey by arguing that her testimony that there was "$17,500 sitting around the house" was incredible. Tr. at 756. The prosecutor's argument did not misstate Jennifer Lahey's testimony because, according to her testimony, she hid a total of $17,500 in cash which she had received from Currens from 1986 through 1988 in her house. Tr. at 704. Jennifer Lahey did not tell her husband about this money until late 1991, did not deposit this money in a bank account or safe deposit box, and did not spend more than a small portion of it. Tr. at 703–04.

■ The defendants argue that the prosecutor committed misconduct by informing the jury that the search warrant for Lahey's office "was approved by a court" during his rebuttal argument. Tr. at 820. The prosecutor's statement was invited by Lahey's attorney, who during his closing argument accused the government of destroying Lahey's law practice by searching every file in Lahey's office. *See United States v. Young,* 470 U.S. 1, 12–13, 105 S.Ct. 1038, 1044–45, 84 L.Ed.2d 1 (1985). "It is not only permissible but advisable in closing argument to refute meritless accusations." *United States v. Reed,* 2 F.3d 1441, 1450 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 898, 127 L.Ed.2d 90 (1994). This remark therefore was not plain error. *See Young,* 470 U.S. at 16–18, 105 S.Ct. at 1046–47.

■ The defendants contend that the prosecutor's repeated use of the words "we know" during closing argument, to which the

defendants never objected, is plain error. The defendants assert that the prosecutor, by repeatedly using this phrase, suggested that the government was aware of additional evidence against the defendants which had not been presented to the jury and that Lahey had been found or pleaded guilty to Counts One through Five. This interpretation is strained and untenable. The prosecutor merely used the words "we know" to refer the jury to the government's evidence and to summarize the government's case against the defendants. In any event, the prosecutor's use of this phrase cannot be plain error because the jury was instructed that it was to consider only the evidence received in the case, it was the sole judge of the facts from all of the evidence, the presumption of innocence was not overcome unless it was convinced beyond a reasonable doubt from all of the evidence in the case that the defendants were guilty, and "[t]he other counts of this indictment are no longer before you and you must consider only the remaining Count 6." Tr. at 821, 824, 829, 832. Jurors are presumed to follow their instructions. *E.g., Francis v. Franklin,* 471 U.S. 307, 324–25 n. 9, 105 S.Ct. 1965, 1976–77 n. 9, 85 L.Ed.2d 344 (1985). The defendants' remaining claims of improper prosecutorial remarks during closing argument are without merit and do not require discussion, as none of the challenged remarks was improper or constitutes plain error under *Olano.*

The defendants contend that the prosecutor also committed misconduct by misstating evidence during Currens' closing argument. Currens' attorney attacked the government for questioning, while Currens was testifying before the grand jury, Currens' testimony that he had cashed a $10,000 check from his checking account in order to pay Jennifer Lahey $10,000 in cash in 1988. Currens' attorney continued his argument as follows:

> MR. MILNER [counsel for Currens]: I said to Mr. Cronin a moment ago: Here is the check. Now, had he and his army of men done a little research before they dragged my client into the grand jury and accused him of making up this $10,000 and making it up about having cashed a check and gotten the money, he could have been spared the humiliation he was put through that day in front of those people.

> When does it end, is what I want to know. How many times do we have to come forward? Will there be another proceeding where we will produce another check? Here it is, please, and why did I have to put this check in? Why did these fair-minded people who want honest and forthright answers—

> MR. CRONIN [attorney for the government]: I object, Your Honor. The government presented that check in discovery to Mr. Milner.

> MR. MILNER: Objection.

> MR. KING [counsel for Lahey]: Leave to approach, Your Honor.

> MR. MILNER: Absolutely.

> THE COURT: You're getting yourself in trouble for the government here. George Sutherland said that prosecutors can strike hard blows but not foul ones and the same applies to defense counsel. Now, please get on. I will deal with your motions later.

> MR. MILNER: Thank you, Judge.

Tr. at 797–98. Currens' attorney then continued his attack on the government without objection. Tr. at 798–99.

No evidence was presented that the government had produced the $10,000 check or a copy of the check during discovery. Although the prosecutor's objection to Currens' closing argument was improper, the objection did not " 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' " *Reed,* 2 F.3d at 1450 (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)); *see also Badger,* 983 F.2d at 1450–51. The district court reprimanded the government, and Currens' attorney proceeded to continue his attack on the government for failing to produce the check without objection. The check, moreover, was only tangentially relevant to the government's case, and there was a wealth of other evidence establishing that Currens' grand jury testimony was false.

The defendants' final challenge to their convictions is that the cumulative impact of inadmissible evidence, incomplete jury instructions, and prosecutorial misconduct deprived them of a fair trial in violation of the Due Process Clause of the Fifth Amendment. We have already examined these claims indi-

vidually and concluded that the challenged evidence was not inadmissible under Rule 404(b), the district court's instructions were proper, and none of the prosecutor's remarks during closing argument warrants reversal of the judgment. Their arguments fare no better when presented cumulatively. The defendants received a fair trial.

For the foregoing reasons, the convictions of Lahey and Currens are AFFIRMED.