**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Geok Soo LIM, Defendant–Appellant.**

No. 01–4369.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 2003.

Decided Jan. 23, 2003.

Before MANION, KANNE, and DIANE P. WOOD, Circuit Judges.

## ORDER

Geok Soo Lim was convicted under 18 U.S.C. § 1344 of scheming to defraud Citibank on a grand scale. He did so by taking advantage of an inexplicable loophole in Citibank regulations that made funds from checks drawn on certain foreign currencies immediately available. By repeatedly depositing checks from two Singapore accounts—including one that had closed long before, and another with a paltry balance—Lim was able to make withdrawals over a single ten-day period totaling approximately $1.8 million. Lim opted for a bench trial, was convicted, and received a 57 month sentence. He now appeals on two bases. First, he contends that the government failed to prove beyond a reasonable doubt that he acted with the specific intent to defraud required by the statute. Second, he argues that the district court made certain evidentiary errors in this bench trial. In our view, the evidence was more than sufficient to sustain the conviction, and there was no evidentiary error. We therefore affirm.

Lim's attorney acknowledged at oral argument that Lim faced a Herculean burden in attempting to argue insufficiency of the evidence. She was right. We review sufficiency-of-the-evidence claims in the light most favorable to the government and ask whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Richardson*, 208 F.3d 626, 631 (7th Cir.

2000). Lim's principal argument is that Lim's specific intent could not be shown without evidence that the two Singapore-based accounts from which he wrote bad checks were either closed or lacked sufficient funds at the time of the fraudulent acts.

■ It is true that the government presented no such evidence, largely because of difficulties in obtaining this kind of information from a foreign country with strict bank secrecy laws. Nonetheless, it was not the *sine qua non* that Lim urges. The government offered instead extensive circumstantial evidence that Lim knew that the accounts were nowhere close to supporting the checks he was writing. With respect to one account, the government offered a 1995 letter establishing that most of the money was depleted, and also a bank statement from early 1998 reporting that slightly more than $20,000 remained. Even though there was a theoretical possibility that Lim might have replenished the account after the 1998 bank statement, the evidence of the discrepancy between the balance in 1998 and the huge sums that Lim sought to draw from the account in 1999 supported the inference that he knew the checks were bad. As to the other account, the government offered conclusive evidence that Lim was the only signatory Moreover, the evidence showed that the bank had mailed a notice to both Lim's home and business address in Singapore in March of 1994 informing him that the account was closed. That notice arrived just a few days before Lim's passport revealed that he had returned home to Singapore. Once the government presented credible evidence that an account had been closed more than four years prior to the fraud, it was not essential that it present further evidence that the account had not been re-opened.

Beyond that, the details of the accounts were not the only evidence before the court tending to show Lim's specific intent. Indeed, the government presented overwhelming circumstantial evidence that Lim knew exactly what he was doing and intended to defraud Citibank. We mention only some highlights here. The check stubs from a checkbook found in Lim's Naperville, Illinois, home matched the checks that Lim deposited from one of the accounts. The government also presented evidence that the district court was entitled to credit that the checks drawn from one of the accounts included obviously forged signatures of the other signatories on the account. A Citibank employee, Uzma Hashmi, testified that she had explained to Lim in 1998 that his deposits would be instantly available. In early September, when the scheme was in full swing, Lee also befriended another Citibank employee, one Huamin Zhang, taking her to lunch and revealing to her that he was planning a scheme that would involve the rejection of checks and that he knew this was dangerous. Lim then solicited information from Zhang about how Citibank cleared its foreign checks and how he could get money out of Citibank in a hurry without attracting the attention of bank security. Witness testimony also established that, during a ten-day spree beginning on August 30, 1999, Lim presented unsolicited reference letters to bankers at various financial institutions other than Citibank into which he sought to deposit his ill-gotten funds, generally acted nervous during these transactions, and vastly inflated his net worth. These actions cumulatively supported the inference that he knew his actions were illegal. Finally, Lim did little else during five days of the ten-day period than, in the words of the district court, "shoot[ ] back and forth across town" from one Citibank branch to another while making enormous deposits and withdrawals. As the district court pointed out, these amounts escalated: on August 30, he deposited and withdrew $10,000; on September 2, $35,000; on September 3, $150,000; and by the next two business days it was $1.15 million and $1.5 million respectively. This flurry of movement from one branch to another, the government claimed, proved Lim's a desire to conceal his actions and, thus, his consciousness of guilt. This evidence, taken as a whole, easily qualifies as "sufficient" on the issue of Lim's specific intent.

In the second part of his appeal, Lim challenges the district court's decision to "admit" evidence (before itself) that Lim opened accounts at two brokerage houses (A.G. Edwards and Charles Schwab) and an additional bank (Harris Bank in Naperville) and deposited large amounts of the money obtained from Citibank into each. Lim claims that the consideration of this evidence was inconsistent with FED.R.EVID. 404(b), the "inextricably intertwined" doctrine, and FED.R.EVID. 403. We review the district court's decision to admit this evidence for abuse of discretion. *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir.1998).

Nothing in Rule 404(b) prevented the district court from using the evidence Lim challenges. We have stated on more than one occasion that acts "concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of 'other acts' within the meaning of Fed.R.Evid. 404(b)." See *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir.2002); see also *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir.1995) (citing cases). Here, the challenged evidence easily clears Rule 404(b)'s bar on propensity evidence. For instance, the opening of the other accounts helps to establish identity. Further, Lim's efforts to spread his ill-gotten

gains among several financial institutions is probative of an intent to defraud by demonstrating his desire to conceal the proceeds. Finally, Lim's nervous demeanor and provision of unsolicited reference letters tend to show consciousness of guilt.

For many of the same reasons, we find that the evidence of Lim's disposition of the funds was "inextricably intertwined" with the crime charged. As an aside, we should note that, though Lim treats Rule 404(b) and the "inextricably intertwined" doctrine as separate challenges to admissibility, they are really two sides of the same coin. The reason why "inextricably intertwined" or "intricately related" evidence is admissible is because such evidence does not relate to the type of "other acts" that are the concern of Rule 404(b). See *United States v. Lahey*, 55 F.3d 1289, 1295–96 (7th Cir.1995). In order to show that evidence is so closely related to the events at issue that Rule 404(b) should not apply, the proponent must show that one of three conditions obtains: the evidence completes the story of the crime on trial; its absence would create a void in the story; or it either helps to explain the circumstances surrounding or tends to prove an element of the charged crime. See *Senffner*, 280 F.3d at 764. Lim's main argument is that because Lim was accused of defrauding Citibank, not the banks into which he sought to deposit the funds, none of these conditions is present. We see the record differently. Under any reading of the test set forth in *Senffner*, the evidence of the post-fraud deposits helped to complete the story, and Lim's nervous demeanor and his desire to spread his ill-gotten gains among several different financial institutions were probative of his intent to defraud.

Finally, we reject Lim's Rule 403 claims, which are inapposite in a bench trial, where there is no risk of jury prejudice. See *United States v. Shukri*, 207 F.3d 412, 419 (7th Cir.2000) ("In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary."); see also *Ashford v. Gilmore*, 167 F.3d 1130, 1136 (7th Cir.1999).

AFFIRMED